UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mark S. Bowers,

      Plaintiff,

   v.

Life Insurance Co. of North America,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-891 ADM/JJG

___

Denise Yegge Tataryn, Esq., Brian R. Christiansen, Esq., and KrisAnn Norby-Jahner, Esq., Hellmuth & Johnson PLLC, Edina, MN, on behalf of Plaintiff.

Daniel K. Ryan, Esq., and Michael T. Berger, Esq., Hinshaw & Culbertson LLP, Chicago, IL, and Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Court Judge for a ruling on two matters. First, as directed by the Court, Defendant Life Insurance Company of North America ("LINA") has made a finding on the issue of Plaintiff Mark S. Bowers's life insurance policy coverage under the terms of the life insurance policy issued by LINA (the "Life Policy"). Bowers challenges the finding, and the Court now reviews the finding's appropriateness. Second, Bowers seeks to have the Court award attorney's fees from LINA under ERISA.

## II. BACKGROUND

The facts underlying this dispute have been thoroughly briefed by the parties and discussed in the Court's May 14, 2014 Order [Docket No. 39] ("Order"). In short, Bowers's Life Policy waives the payment of life insurance premiums (the "WOP" benefit) if the employee qualifies as "disabled" and has been continuously employed prior to the disability. See id.

LINA determined Bowers did not qualify for the WOP benefit because he had not been continuously employed prior to leaving work.  See id. at 11-12.  After performing a de novo review of the administrative record, the Court held Bowers had been working sufficient hours to qualify for the WOP benefit, entitling him to continued life insurance coverage under the Life Policy.  See id. at 11-14.

The Court remanded two matters to LINA for further resolution.  First, neither the parties' arguments nor the record definitively addressed the amount of Bowers's Annual Compensation under the Life Policy.  The Life Policy defines Annual Compensation as:

> An Employee's annual wage or salary as reported by the Employer for work performed for the Employer.  It includes earnings received as bonuses, commissions and overtime pay, but not other extra compensation.  Annual Compensation is based on the Employee's actual salary as of April 1st of each year plus the Employee's bonuses, commissions and overtime pay for the prior 12 months. Annual Compensation is updated each May 1st.

See Michael T. Berger Aff. [Docket No. 25] Ex. 1 ("Admin. Record") at 509.  Under the Life Policy, the amount of basic life insurance coverage is equal to the amount of the employee's Annual Compensation.  Bowers purchased supplemental coverage under the Life Policy which granted him an additional life insurance benefit equal to five times his Annual Compensation. Order at 16.  Because the parties disagreed as to the amount of proper coverage, this matter was remanded to LINA for further findings.  Second, the Court held LINA had improperly collected premium payments from Bowers.  The Court ordered LINA to determine the amount of excess premium payments and return this amount to Bowers.  Finally, in addition to these two matters, the Court allowed the parties to brief the issue of whether Bowers should receive attorney's fees under 29 U.S.C. § 1132(g)(1).

In its letter dated June 13, 2014, LINA states it has determined the amount of excess premium payments owed to Bowers, and Bowers does not dispute the determination. Letter, June 13, 2014 [Docket No. 40]. However, the parties dispute the amount of Annual Compensation Bowers received as defined by the Life Policy, and LINA argues Bowers should not receive any attorney's fees.

### III.  DISCUSSION

**A.  Annual Compensation Amount**

Under the Life Policy, the amount of an employee's life insurance coverage is tied to his Annual Compensation. The Administrative Record in this matter showed that Bowers's salary was set at $100,000 as of April 1, 2009. Admin. Record at 1214. Combined with a bonus of an unstated amount, Bowers's employer, C.H. Robinson Worldwide, Inc. ("C.H. Robinson"), calculated Bowers's total life insurance coverage amount as $634,000. Id. at 1304.

In its remanded determination, LINA now concludes Bowers is eligible for a total of $672,000. This amount includes $112,000 in basic coverage, and $560,000 in supplemental coverage. LINA calculated Bowers's basic coverage based on an Annual Compensation of $100,000 in base salary for 2008, and a $12,000 bonus Bowers earned the same year. Order at 16.

Bowers argues his total amount of life insurance coverage should be $950,000. Bowers agrees his salary was set at $100,000 as of April 1, 2009, in accordance with the Life Policy's definition of Annual Compensation. Admin. Record at 509. However, Bowers argues he received bonuses totaling $90,000 in 2008, relying on an earnings statement maintained by C.H. Robinson. Id. at 1895.

The record as a whole supports LINA's finding. As the Court held previously, C.H. Robinson's records, as well as Bowers's own affidavit, show Bowers agreed to receive significantly lower bonuses in exchange for returning to work in a consulting capacity. Order at 2, 16. Although the record is somewhat uncertain as to the amount of Bowers's bonus, the greater weight of evidence supports that Bowers agreed to a bonus amount of $12,000. The majority of C.H. Robinson's records, including Bowers's paycheck stubs, support LINA's finding. Admin. Record at 1304-05.

**B. Attorney's Fees**

   **1. <u>Westerhaus</u> Factors**

ERISA states a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether a court should award attorney's fees, the Eighth Circuit Court of Appeals has adopted a five-factor test:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

<u>Lawrence v. Westerhaus</u>, 749 F.2d 494, 496 (8th Cir. 1984) (quoting <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980)). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section [1132(g)]." <u>Bowen</u>, 624 F.2d at 1266. Also, ERISA is remedial in nature, and seeks to "protect employee rights and to secure effective access to federal courts." <u>Starr v. Metro Sys., Inc.</u>, 461 F.3d 1036, 1040 (8th Cir. 2006)

(quotation omitted).  "Therefore, although there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees."  Id.

In this case, the five Westerhaus factors narrowly favor an award of attorney's fees.

First, the record does not indicate LINA has acted in bad faith.  Bowers argues that LINA nevertheless has some degree of culpability for failing to thoroughly investigate Bowers's employment.  This argument is somewhat supported by the record.  As Bowers understood, C.H. Robinson lacked detailed records regarding his hourly employment because he was a salaried employee.  However, the record shows LINA performed essentially the minimum amount of investigation possible.  LINA did not conduct any interviews or obtain any information beyond e-mailed summaries provided by C.H. Robinson's human resources department.  LINA then relied on the incomplete information it received from C.H. Robinson to deny benefits despite medical and employment evidence to the contrary.  As a result, the first factor favors Bowers slightly.

Second, LINA does not dispute its ability to pay an award of attorney's fees.  LINA does, however, argue that this second factor should not affect the Court's calculus when all of the remaining factors weigh against an award of fees.  See Cont'l Assurance Co. v. Cedar Rapids Pediatric Clinic, 957 F.2d 588, 594-95 (8th Cir. 1992).  Because the other Westerhaus factors narrowly support an attorney's fees award, this factor also supports the award.

The third and fourth factors in this case are related.  The third factor addresses whether an award of fees would have any deterrent effect in similar circumstances, while the fourth factor addresses what benefit, if any, Bowers conferred on other plan participants by litigating this

case.[1]  As held above, LINA conducted a marginal investigation and then denied Bowers's WOP benefit.  At the same time, Bowers persuasively argues that declining to award attorney's fees in this case could discourage future plaintiffs from filing suit, as the cost of litigation could quickly overshadow a plaintiff's victory on the merits.  An award of attorney's fees could encourage LINA or other plan administrators to conduct more thorough investigations in the future and protect an employee's ability to pursue ERISA claims.  Thus, an award could serve as both a deterrent and a benefit.

As to the fifth and final factor, the somewhat vague record meant the parties each had at least some merit to their positions.  However, as the Court found, key medical and employment evidence supported Bowers's position, evidence which LINA largely ignored in its initial determination and subsequent appeals.  See Order at 13-14.  As a result, this factor narrowly favors an award of fees.  Overall, the Westerhaus factors favor an award of attorney's fees.

**2. Reasonableness of Fees**

The United States Supreme Court has outlined several factors a trial court may weigh when determining whether a request for attorney's fees is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[1] Bowers does not argue the dispute involved "a significant legal question regarding ERISA itself."  Westerhaus, 749 F.2d at 496.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (2008) (citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1984)).  The court reviewing the fee request need not explicitly consider every factor.  Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999).  The court should start assessing attorney fees by determining the lodestar, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."  Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002).

Bowers seeks a total fee and cost award of $66,864.63.  Denise Y. Tataryn Aff., June 27, 2014 [Docket No. 43] ("Tataryn Aff.").  This amount reflects the work performed by four attorneys and one paralegal over a total of 215.8 hours between April 2013 and June 2014.  Id.  Lead Plaintiff's counsel Denise Y. Tataryn performed 132.6 hours of work at a billable rate of $350.00 per hour.  Attorney Andrew Hippert, who has practiced in ERISA litigation for more than ten years, performed 30.6 hours of work at $290.00 per hour.  Third-year associate KrisAnn Norby-Jahner, who left the firm while the case was pending, performed 11.6 hours of work at $250.00 per hour.  First-year associate Brian Christiansen performed 15.8 hours of work at $240.00 per hour.  Finally, paralegal Molly E. Scott performed 25.2 hours of work at $170.00 per hour.  Id. ¶¶ 8-12.

LINA argues Bowers seeks an unreasonably high amount of fees.  LINA argues the hourly rates stated by the attorneys and the paralegal are "inordinately high" when compared with the rates billed by other attorneys in the field.  Def.'s Reply to Life Ins. Coverage & Fee Pet. [Docket No. 46] 11.  Most attorneys in ERISA litigation, LINA argues, charge less than $300 per hour and less than $110 per hour for paralegal work.  Here, LINA argues, Bowers has provided no evidence justifying his counsel's upward rate departures.  In addition, LINA argues

Bowers's counsel performed excessive amounts of work. Among others, LINA lists as examples the 4.3 hours counsel worked to edit the disclosure required by Rule 26(f) of the Federal Rules of Civil Procedure, as well as the approximately 43 hours counsel spent drafting a single reply brief in support of summary judgment. Tataryn Aff. Ex. 1 ("Fee Invoice") at 6.

In the Court's experience, Bowers's counsel's stated rates are both somewhat high for this area of litigation and inefficiently allocated among the attorneys. "Courts in this Circuit typically award hourly rates of $300 or less to prevailing attorneys in ERISA litigation." See Frerichs v. Hartford Life & Accident Ins. Co., No. 10-3340, 2012 WL 3734124, at *2 (D. Minn. Aug. 28, 2012) (collecting cases). The Frerichs decision is two years old, and some increase in attorney rates is to be expected over time, but Bowers has not offered sufficient support indicating $350 per hour is appropriate for a senior ERISA litigator, or that $240.00 is appropriate for a first-year attorney in the area. Relatedly, Attorney Tataryn, the most experienced and most expensive of Bowers's attorneys, billed 132.6 hours: well over half of all legal work performed by Bowers's counsel in this case. In contrast, the more junior attorneys only performed about 27 hours of work. This allocation suggests Bowers's team of attorneys did not allocate work efficiently to reduce costs. To reflect these inefficiencies and bring counsel's stated rates more in line with the market, Bowers's counsel rates will be reduced for purposes of this matter as follows: Tataryn's rate will be reduced to $320.00 per hour; Hippert's rate will be reduced to $260.00 per hour; Norby-Jahner's rate will be reduced $220.00 per hour; Christiansen's rate will be reduced to $210.00 per hour; and Paralegal Scott's rate will be reduced to $140.00 per hour.

Of all the examples identified by LINA as showing an excess amount of work, only the

two noted above are persuasive. First, 4.3 hours is an excessive amount of time to spend editing a draft Rule 26(f) report forwarded by opposing counsel. See Fee Invoice at 3. This amount will be discounted to 1 hour at Tataryn's modified rate. Second, Hippert and Tataryn spent a total of 43 hours drafting Bowers's reply brief in support of summary judgment, when Tataryn alone spent less than half of that amount of time, 20.4 hours, drafting Bowers's memorandum in opposition to LINA's motion for summary judgment. Bowers's counsel offers no indication as to why this amount of time was spent drafting a reply brief, and the brief itself is straight-forward. See Derksen v. CNA Grp. Life Assur. Co., No. 04-3411, 2006 WL 1877072, at *7 (D. Minn. July 6, 2006) ("A straight-forward appeal from a denial of disability benefits is the type of ERISA case the Court sees most often."). As a result, Hippert's time spent on this brief will be reduced by half. The Court has carefully reviewed both Bowers's Fee Invoice and the additional arguments made by LINA, and finds the remaining work reasonably billed.

The above modifications to Bowers's counsel's hourly rates, less the two reductions discussed above, result in a total fees and costs award of $54,819.63. Based on the Court's review, its experience with and knowledge of the legal market, and the relevant case law, this amount reasonably compensates Bowers's attorneys for a successful result obtained in what amounted to a relatively uncomplicated ERISA benefits case. See McClelland v. Life Ins. Co. of N. Am., 679 F.3d 755, 762 (8th Cir. 2012) (finding over 500 hours of work unreasonable in ERISA benefits denial case); Derksen, 2006 WL 1877072, at *7 (finding 400 hours excessive); Tataryn Aff. Ex. 3 (Order, Mason v. UNUM Life Ins. Co. of Am., No. 04-3703 (D. Minn. Dec. 13, 2005) (finding 249.5 hours reasonable)).

## IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant Life Insurance Company of North America's finding that Plaintiff Mark Bowers's total amount of life insurance coverage under his policy is $672,000 is **AFFIRMED**.

2. Plaintiff is awarded $54,215 in attorney's fees and $604.63 in costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


   s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 28, 2014.